We have five cases on the docket today, two argued and three submitted. The first case is 2011-5125, but before we get to that, we have a motion by one of our judges. Judge Reyna? Yes, Presiding Judge Moore and Judge Clevenger, I move for the admission of Krista Ann Marie Krohn, who is a member of the bar in good standing of the highest courts of Minnesota and California. I have knowledge of her credentials and am satisfied that she possesses the necessary qualifications. And Krista, I know this is a special day for you, but it's also a special one for me. Tomorrow will be one year that I was sworn in as circuit judge on this honorable court. And you were my first law clerk, and your assistance was invaluable as I established the chambers and as I began my work as a judge. So I'll be forever grateful to you for that. I wish you the best always, and Godspeed as you end your clerkship. I hope that you are better armed as a result of your clerkship with me in this court. Okay, Judge Clevenger, any objections? Can I just make a comment? Several weeks before the applicant actually showed up and filled out all the papers to become an official employee of the United States government in this court, I received a telephone call from a former law clerk of mine on someone for whom I have the very highest regard, a very distinguished practitioner in the patent law field. And he said, guess what? And I said, I don't know what. Why are you calling? And he said, well, a really terrific person is coming to your court to be the first law clerk for your new, or was going to be your new judge, Judge Brena. And I said, well, tell me about this person. And so my former clerk for whom the applicant had worked gave me a pretty good big thumbnail sketch about why we were going to be lucky to have this person come and be on our court. And although I don't work in Judge Rainer's chambers, this is a very close-knit court and we do know one another. And so to the applicant, I say, thank you very much for your great service. My former law clerk was sure correct. And I wish you Godspeed and good luck. And I vote to grant the motion. Well, I also vote to grant the motion. Christo, welcome to our bar. I look forward to seeing you in the future, hopefully arguing in front of us sometime soon. Mr. Horbally, I invite you to administer the oath, please. I read it right now. I swear on the front that you will comport yourself as an attorney and counsel of this court. Uprightly and according to the law that you will support the Constitution of the United States of America. Congratulations and welcome to the bar of the United States Court of Appeals, Judge Zinkelman. Thank the parties for their indulgence. So let's begin. 2011-5125 Northrop Corporation versus the United States. Mr. Fox. Good morning, your honors. Before I begin, may I introduce my co-counsel, Patrick Smith. May it please the court, at the outset we recognize we're dealing with a decision of another panel of this court in the CNG transmission management VEBA case that the government argues is controlling precedent. If the government is correct, the only remedy that can satisfy Northrop at this point is for this panel to recommend to the full court that it hear this appeal en banc. Before addressing that issue, however, Northrop VEBA believes this panel can rule in its favor without overruling CNG by taking into consideration and intervening Supreme Court decision that totally undercuts the only precedential rationale for the court's decision in CNG. Is this something that you argued in your blue brief? Excuse me? Did you make this argument in your blue brief? Not in exactly those words. What case are we talking about, Mr. Fox? We're talking about United States, excuse me, the exact, yes, United States v. Tinklenburg, and in our blue brief on page 32, we stated the statutory language, quote, resulting from in Tinklenburg is similar to the statutory language resulting in section 512A3E1. Similar to, let's be precise. Is it exactly the same? It is not exactly the same, but I will tell you exactly what it is, but it is virtually identical. This argument you're making based on Tinklenburg is a different, it's shaped differently than the argument you had in your brief. I didn't recall in your brief over intervening Supreme Court authority. It didn't quite go that far, but it says what Tinklenburg does demonstrate is that CNG was incorrect to conclude the words, quote, result in have a plain meaning that could be determined by reading the words in isolation and by reference solely to the meaning of similar words in statutes wholly unrelated to section 512. I don't think it's a big stretch to suggest that this case effectively overrules CNG. Let me get right to that case. You're saying it does overrule. Yes, I'm saying that. In that case, the Supreme Court had before it the question of whether for purposes of the Speedy Trial Act of 1974, the words, quote, delay resulting from any pretrial motion, end of quote, required that such a motion actually delay a trial or whether the words were intended to be read as meaning that any pretrial motion was deemed to result in a Now, just as the panel in CNG did, the Sixth Circuit Court of Appeals, which had heard Tinklenburg before it got to the Supreme Court, was of the opinion that their, quote, is no conceivable way to read this resulting from language other than to require a delay to actually result from any pretrial motion. The Supreme Court disagreed, stating that the terms of the statute, quote, must be read in their statutory context in order to determine how the provision in question should be applied in an individual case. Then the court, following an extended discourse, concluded, quote, thus, language alone cannot resolve the basic question presented in this case. But when read in context and in light of the statute's structure and purpose, we think it clear that Congress intended subparagraph D to apply automatically. Now, it is our belief that after Tinklenburg, the Supreme Court would certainly not agree with the conclusion in CNG that the, quote, results in language in issue in CNG was as clear and unambiguous as the panel found. Now, if following the decision in CNG, the Supreme Court had the occasion to hear an indistinguishable case on appeal from another circuit court and ruled in the taxpayer's favor, the decision decided in this court would not be a bar to a decision in Northrop's favor in this case. And, in fact, I think such a Supreme Court decision would require the court to decide in Northrop's favor. Now, Northrop Wiebe contends that the Tinklenburg decision should be given the same language resulting in, found in a statute dealing with criminal law, right, but necessarily has the same meaning as the language of the words that you find in the tax statute. That is correct. We're not saying that the language is the same. What we are pointing out is that- Well, what is exactly the language in Tinklenburg? You kind of caught me off guard because, you know, frankness, I don't have a copy of Tinklenburg with me. What's the exact statutory language in Tinklenburg? It's not resulting in because you said it's not the same language. No, it was the Speedy Trial Act of 1974 said that if there was a delay resulting from any pretrial motion, that's what it said, a delay resulting from any pretrial motion, then the Speedy Trial Act said that somebody had to have a trial, I think, within 60 days after - I think Judge Clevenger is looking for you to actually read him the exact language, which I believe is delay resulting from, not resulting in. I think what we're trying to do is understand- Yes, delay resulting from any pretrial motion, and all I'm saying is- Resulting from means resulting in. No, I'm not saying that. I'm saying that the Sixth Circuit read that language and said this can only mean that a motion must actually result in a delay of the trial. When did the Sixth Circuit read the Tinklenburg language? You're talking about the Sixth Circuit read the language in our state? Yes, the Sixth Circuit read this language in the Speedy Trial Act to say that- So you're telling me Tinklenburg comes out of the Sixth Circuit, is that the idea? Yes, to the Supreme Court, but the Sixth Circuit is not important other than that's just where it happened to be. I'm not trying to make- Was the Supreme Court addressing CGM when it made its decision? The Supreme Court, did it ever address CGM or- I'm sorry, what is CGA? CNG. CNG, I'm sorry. Oh, CNG. Oh no, it had nothing to do with CNG. The only point that we're trying to make here is that when the CNG court said that the words result in are perfectly clear, that they did so without looking at the statute in context. And the Supreme Court has said that when you're looking at words like result in, you just don't read the language. You have to still look at the context of the statute. And they said specifically- So the CNG court did not look at these words in context, is that what you're telling me? That is right. Absolutely. And the Supreme Court has a rule that says when you're construing a statute, you should always construe the words of the statute in the context of the act. That is right. And so a fundamental rule of statutory interpretation was violated by our court in CNG. Yes, sir. So what? So what? It's binding. Let's assume that CNG is just totally wrong. Yes. It's binding on me. It's binding on me. If CNG said the reason why you lost is because angels danced on the head of a pin, I'm still bound by that. Okay. But you started the argument by telling me that there's a little crack in the armor and that this panel was free to treat CNG as a nullity. That's what you told me. Yes. Because- So what? So what is that the entire CNG decision was based on the notion that the statute was perfectly clear and the statute as explained- And what I'm trying to tell you is that if the CNG decision had contained reasoning with which all three of us absolutely disagree, there's nothing we can do about it. Well- We could write an opinion, which is what I think you want us to do, saying that although we're bound by CNG and we faithfully must follow it, we don't like it and we think our colleagues should go in bank and flip it. Yes. We certainly wish that result at the very least, but we will also think- For my money, you need a better argument than one you just trotted out for me to write that kind of an opinion. All right. We were basically trying to argue that Tinklenberg overruled CNG in actuality without so stating. But that's not going anywhere with you, I can tell. You're not making that argument unblushingly. That's fine. But nonetheless, then Tinklenberg is still a good reason for this court to conclude that the CNG case was improperly decided because all they said was the statute was perfectly clear. Tell me why the statute unambiguously produces the result you want, namely that this investment income is non-taxable. Read me the words in the statute that lead inexorably to the conclusion that there's only one plain meaning of the statute, and that's the one you advertise. Okay. Well, first of all, we're looking at the section 512A3E1. And the point of our argument and what the court in CNG missed is the statute is not perfectly clear. It is not perfectly clear in the government's favor. It's not perfectly clear in our favor. You're well into your rebuttal time. If you'd like to use it, it's, of course, your prerogative. Would you like to save the rebalance for rebuttal? I think I should answer Judge Clevenger's question. The statute is not perfectly clear. The statute is not perfectly clear. You don't ran on plain meaning. No. The plain meaning is not there.  We do explain this at length in our brief. And the point is that Congress, when it adopted these rules, said that they were concerned with the unreasonable accumulation of deductible contributions and of income. And they wanted to do something about this. And so they provided that to restrict both. Now, the CNG court said that, oh, well, 419 and 512 were going after totally different things. Well, it may be that a contribution and income are different things, but they're not different in context. They both were being restricted because of unreasonable accumulations. And in Section 419, you only get a deductible contribution if there's not sufficient income to pay the benefits. Counsel, hearing your arguments and reading your brief, essentially what you're saying is you want us to rule that our court in CNG erred. I want you to at least do that. I mean, yes or no? I mean, is that what you? Is that correct? I want you to have enough doubt about that opinion so that you recommend to the full court that it hear this case en banc. Yes. I guess the answer would be yes. That case is wrong. But if the statutory language is not clearly in your favor, the reason why we would rule for you is that when we look at the words resulting in context, we would agree with the Sixth Circuit interpretation of those words instead of what we did earlier. The Sixth Circuit in this? Yes, in Sherwood Williams. Right. Yes. Well, you have about a minute left. I'll save it. How about if I'll give you an extra minute so you'll have two for rebuttal? You're very kind, Your Honor. May it please the Court? Is it Mr. Catterall? Yes. I'm Arthur Catterall with the Justice Department on behalf of the government. I would like to start out by saying I'm a little caught off guard myself by the intervening Supreme Court argument. Obviously, it was not made in the briefs. I looked at your red brief. You don't cite Tinklenburg at all, so you obviously didn't read the blue brief as raising this issue. No. And so they certainly talked about, you know, how Tinklenburg discusses a principle of statutory construction, but there's no suggestion that it overruled CNG. I think it's quite a stretch to say that a case involving a speedy trial— As, you know, once you cook, you know, double cook the potion to reduce it, it just turns out to be an argument that there's a difference of opinion as to whether or not in CNG we interpreted the magic words in the context of the statute or we didn't, right? And your argument from day one has been when you look at the context of the statute and what Congress was trying to achieve, and that result has to have the meaning that we gave it in CNG, not the language, not the meaning that the Sixth Circuit gave it in Sherman-Williams. Right. Right. And, I mean, I don't anticipate the court actually giving serious consideration to this I would suggest— There's nothing wrong with having investment income being shielded from tax, right? There's nothing wrong with— I mean, you have a situation like you have here where they have employer contributions and employee contributions, right? And when they start the year, they start it with a surplus, a leftover money apparently. And they go through the year and they have a certain number of bills and you get to that magic number at the end, how much, you know, how much can your set-aside be? It can't be greater than the bills you're going to have accumulated, right? And if they have enough money in the till from their employer-employer contributions, your theory is that they pay that and the leftover money from investment income is taxable. Correct. But if it turned out that there was a shortfall for some reason in employee contributions, right, and at the end of the year or during the year they actually needed the investment income in order to pay the bills, right, then that investment income would be tax-free, right? No. No? You're saying—so you're saying that you can tell—I mean, you can trace funds— I'm just looking for a situation where on the numbers, if—let's assume that your employee contribution and your employer contribution together were 100 and it turned out that you had bills of 110 and you had made investment income during the year of 10, right, and so you—that 10 of investment income is going to be tax-exempt, isn't it? It depends on what your year-end account limit is and your year-end account balance. I'm assuming your year-end was 110. Okay, the year-end— Yeah, you needed 110. Okay, but you spent—I thought you said you spent 110. No. Well, you did. You spent— So your year-end balance is zero. You spent it out, but it was 100 of it was from employee and employer contributions and 100 of it was from investment income. Okay, what is your year-end balance? I mean, that's what determines whether the income is going to be subject to tax. It's the extent to which your year-end account balance exceeds— Year-end account balance is the amount of bills that are outstanding. Okay, yeah. I think, yeah, it's—right. Reserves for what you need to pay upcoming, I guess, asserted but unpaid claims and then there are certain reserves you take into account. Right. And the point is, if your year-end account balance is in excess of that year-end account limit, any income that the VEBA earned is going to be taxable to that extent. That's how the statute works. Let me put it this way. I mean— At the year-end, you say you've got 100 of dollars in bills outstanding. Okay, so your account limit is 100. Yeah. That's what you're saying. Okay. And so, if you had a surplus of employer-employee contributions, say you had 500 during the year, the surplus in the account from the employer and the employee contributions would be tax-free, right? It's not taxable. The employer contribution and the employee contribution are never taxed, right? That is correct. The employer and employee contributions are not taxed. But, again, to the extent your year-end account balance exceeds the specified account limit, any income that the VEBA earned is going to be taxable to that extent. There's no tracing of, you know, what got spent where or what's on hand at the end of the year. That's how the— And the regulation that's in question makes that clear. Is that the point? The regulation makes that clear, but the CNG court saw no need to rely on that regulation. It found that the language— I understand. The reason why I'm raising it is because I think Mr. Fox may want to talk a little bit about the regulation and its problems. The regulation makes that— Because he didn't raise it on his main argument. The regulation makes that clear, and the conference committee report makes that clear. The conference committee report states—I don't have the exact language with me, but basically says a VEBA's investment income is subject to tax to the extent its year-end account balance exceeds its year-end account limit. The purpose behind all this is to restrict as tightly as possible the amount of tax-free dollars that are in this system. Is that right? Correct. Correct. So— Now, what about Mr. Fox's argument that the—I mean, Mr. Fox tees up the regulation because he said, well, the statute on his face is not exactly clear, and he thinks in the interpreting context he wins. But if he doesn't, if we go to the regulation, apparently his goose is cooked unless he can say the regulation is illegal. Well, first, before you go to the regulation, you go to the legislative history. Again, as the C&G court said, plain meaning, unambiguous, end of story. But even if you were to say, okay, well, let's say— If it's ambiguous, you're suggesting we would look at the legislative history before we consider a regulation? Is that what you just said? Wouldn't the regulation under Chevron deference get deference from us from an interpretive standpoint? I think before you get to a regulation, you know, obviously you look at the statute. And the first thing you do when you look at the statute is the language of the statute. If that's ambiguous, you look to the legislative history. Well, if that's ambiguous, we look to the legislative history. But if it's ambiguous, don't we have to give deference to the government's regulatory interpretation under Chevron? Isn't that something we have to— Certainly. I guess the point I'm trying to make is— we are still convinced that the statute is ambiguous, then we go to Chevron step two. Is that what you're saying? The point I'm trying to make is that the regulation, the solution, you know, the interpretation found in the regulation derives directly from the legislative history. So, you know, I think— Well, that's your answer to their APA argument. Well, certainly the argument that it's arbitrary and capricious. No, but Mr. Fox is making the argument that the agency has to explain itself when it promulgates its regulation. It has to say, why am I doing this? What's the reason for it? What's the rationale? And I think in the brief they said, you know, and we said, well, you know, obviously it comes from the legislative history. And I think in their reply brief you said, well, they said, well, you know, the IRS can't just blindly parrot reasoning from some other source. Well, if it's Congress's intent, I don't think it's up to the Treasury Department to independently analyze, you know, whether Congress got it right. I mean, you know, in my mind, there's no question. Well, his argument is that he can't discern the path. He can't—Mr. Fox wants to say that no reasonable person reading this regulation could figure out why the Treasury promulgated it. What's the rationale? And we're saying because that's Congress's intent, as shown in the conference committee report. Your answer, less polite, would be to say any tax lawyer knows why it's there. I mean, yeah, this is not something that the IRS just cooked up on its own. Now, this is—rule was promulgated. This regulation was promulgated without notice and comment rulemaking. Isn't that correct? It was issued simultaneously with— Can you answer that yes or no? I'm sorry, say again? You know what notice and comment rulemaking is? You publish an advance notice of proposed rulemaking and you invite the world to come in and make comments. This rule was not promulgated pursuant to that procedure, was it? Well— Yes or no? It was promulgated. The notice and comment—the IRS did provide notice and comment. It didn't do that before issuing the regulation. Right, well, the APA contemplates that you do it before. The reason why is that the agency decides whether or not to pay any attention to the comments informing the final rule. Well, and that brings us to— What I'm trying to get at is what kind of deference would it be entitled to? Is it Chevron deference or is it Skidmore? No, we would say it's Chevron deference. Why? How can a— Because—and there's even a— Okay, there's a lot of cases in the D.C. Circuit that talk about this where the agency issues a rule and at the same time invites notice and comment. And the question is did the agency, in light of the fact that it already issued the regulation, did it keep an open mind on the comments that it received? A recent case— You're saying the D.C. Circuit cases say that you treat something as though it had been strictly promulgated pursuant to notice and comment rulemaking if yada, yada, yada. And there's a case in this court that applied this open— What's that case? It is called Mortgage Investors Corporation. And the citation is 220 F. 3rd, 1375. It involved—and I believe it's called an interim final rule published by the Department of Veterans Affairs. They published the interim final rule and the notice of proposed rulemaking at the same time. They ultimately issued a final rule that was substantially identical to the interim final rule. And the court said, look, we have, you know, it's clear that the IRS kept an open mind when it considered the comments received during the comment period so there's no APA violation. Was there a similar interim and a final regulation here? There is not a final regulation here. So there's no evidence that the IRS kept an open mind because we don't have that final regulation that came after the notice and comment period which shows us that the IRS, after receiving the comments, went ahead and issued the rule anyway. That is correct. There is no final rule. There's no evidence at all that shows us the IRS considered these comments in deciding whether to promulgate the regulation. Certainly not in the record. I mean, what we have, we know that it's— It's quite a different situation than our prior case. Don't you agree? It is. Well, I mean, in the prior case, in the mortgage investors case, I mean, I suggest that there's not a whole lot of difference between issuing a final regulation that's substantially identical to the initial regulation and just leaving the initial regulation in place which is what we have here. Now, I understand what your point is, is that, okay, we have no way of knowing whether the IRS kept an open mind. And I agree that that is because of the, you know, during this period of time, temporary regulations could remain temporary forever. That's no longer the case. But we do have a kind of funny situation in that regard. So, yes, that is a— But my point is that, I mean, while certainly there's a difference there between the mortgage investors case and this case, the fact that the rule was issued simultaneously with the notice of comment— I'm sorry, the notice of proposed rulemaking does not necessarily mean that the APA was violated. I say that's what mortgage investors stands for. But in any event, we don't ever get to the regulation because, again, the C&G court found the statute to be unambiguous. And the status of the regulation has no bearing whatsoever on the correctness of the C&G court's holding that the statute is unambiguous. And it doesn't have any bearing on the correctness of the C&G court's additional finding that the legislative history supports its interpretation of the regulation. So is it your view that for this panel to make any type of determination as to the applicability of the APA in the promulgation of the rule, that we would, in essence, be overruling C&G? Yes, you would have to find that the C&G court was wrong in finding that the language was unambiguous. Right, because at C&G we found that the language was not ambiguous. And you would have to get around the fact that they did not raise this APA claim in their refund claim. What would you do with a situation in which the court says, well, the language on the face of it isn't necessarily unambiguous, but after we interpret it in the context of the statute, we say the meaning is clear, which is what we said, unambiguous in C&G. What would happen if the regulation was exactly diametrically opposed? If you'd had a notice and comment rulemaking procedure full blown and they had said the answer is red, but our interpretation of the statute was that it was blue, what would you do in that circumstance? Would the interpretation of the statute still trump? It would depend on the timing, and that's a brand X issue. If this court had said, you know, okay, the statute says X, and after that the IRS promulgated a regulation saying we disagree, the statute says Y, then the regulation trumps under brand X. I know that's not the facts as I know that. Right. Now what about your heavy reliance on the variance rule suggested to me that you were a little scared of the regulation argument. I mean, you're making a really bold argument here that the variance rule is jurisdictional and that because the taxpayer hadn't raised this challenge to the regulation in front of the agency, it's forever barred. Well, I would just say, I mean, there's, by my count, there's at least eight circuits, including this one, that are of the view that the variance rule is jurisdictional. That's the Ottawa Silica case here, which is . . . That's probably a more certain worthy question than the other one. Oh, about whether the jurisdictional issue? Yeah. Well, if you stop and think about it, I mean, it affects every case. I mean, every taxpayer, right, who's asking for a refund, if they don't make the full plan of all their arguments in front of the agency, they're barred in court. Right. I mean . . . That's a much more widespread question than this particular question on these medical trusts. I'm sorry, with these . . . It just struck me as if that's a very interesting certain worthy question. If you're saying eight circuits go one way, how do the others go? And I will say this. I mean, you know, regardless of your view on, you know, is substantial variance, is that jurisdictional, et cetera, I mean, in this case, not only did they not raise the, you know, raise a problem with the regulation, they relied on the regulation. I think that's, in this case particularly, it would be inappropriate to allow the taxpayers to, after having relied on the regulation, say, hey, the regulation's in our favor. Then to come back in court and say, no, no, no, no, it's invalid. Okay, Mr. Catterall, I think we have your argument. Thank you very much. Mr. Fox, you have two minutes of rebuttal left. Okay, I'll try to be very quick. First, Section 419 allows deductible contributions to be made to pay current benefits without regard . . . You could have $20 billion in the fund, and if there's no income, you can make a deductible contribution to pay the current benefits. Now, the 419 specifically says that you cannot make a deductible contribution to the extent income is available. And so it's really six of one and a half dozen of the other. And there's no reason on earth why a contribution should be get tax benefit, but the income not. They're both used to pay exactly the same thing, the current benefits, and they are, in that sense, identical. Now, as far as this argument, the D.C. Circuit and mortgage investors, there are no cases. Mortgage investors is not in the government's brief. We have no idea what it says. These D.C. Circuit cases are not cited. That argument was never made in the brief. Coming quickly to the APA argument, we certainly agree that if the government argument is accepted, then you might as well file a brief as lengthy as we did in connection with your refund claim, or else you're going to be out of court. And the fact that the arbitrary and capricious – What's the import of the variance rule? The variance rule – What's the purpose of the variance rule? The purpose of the variance rule is, at least as I've been practicing law for 45 years, is you can't file a refund claim for $100,000 and then come into court and say, oh, I really meant it was a million dollars. You can't file a refund claim and say, I should get a refund because I didn't claim enough depreciation, and then in court you say, oh, I was wrong. I really meant I should have claimed the investment credit. You have to let the Internal Revenue Service know the basis of your claim. But normally, when you come into court, what we say here is, look, this income is not unrelated business taxable income. That sets forth the case. Everything else is briefing. For instance, we – Your point is that the variance rule is issue-driven. If you raise the issue, then any argument that you want to make later on that you didn't make with the agency, you can make to a court. Yes. What's your best case for that proposition?  What's your strongest case? You mean a cited case? I've read some of the variance cases, and they struck me in the other circuits that they aren't issue-driven. They're argument-driven. Well, here we are arguing that you have to read Section 512 in context of Section 419. We didn't say that in our refund claim, and nobody is saying we can't make that argument. We're saying that the regulation – excuse me. We're saying that the – The purpose of your challenge to the regulation, tell me, I believe, is that you would like – you do not want the regulation to be hanging out there just in case some court decides the statute is ambiguous. Absolutely. And then they go to the regulation because the regulation chops your head off. Right? No. Well, the regulation chops our head off. Yes. But if you say the regulation is invalid, that doesn't mean – Then you can't say that. Right? No. We don't automatically win the case. You could still look at other things and say, well, even without the regulation, they lose. So the regulation – to say the regulation is invalid is not the equivalent of saying, therefore, the government owes us money. But to say that the income is not taxable is the equivalent of saying the government owes us money. Do you have a final thought, Mr. Fox? Your time is well up. So if you have a closing thought you'd like to impart to us. The only closing thought I have is that we believe that the CNG case, the whole premise of that case, is totally in error. And for that reason alone, we recommend that this panel recommend to the full court that they hear our appeal on bond. Thank you all. Case is submitted. Thank both counsel for their argument.